UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TEJAN BAH,<br><br>      *Plaintiff*,<br><br>v.<br><br>DISTRICT OF COLUMBIA, *et al.*,<br><br>      *Defendants*. | Civil Action No. 23-CV-01248 (JDB) |

## DEFENDANT DISTRICT OF COLUMBIA'S PARTIAL MOTION TO DISMISS THE AMENDED COMPLAINT

Defendant District of Columbia respectfully submits this motion to dismiss Counts I and IV of the Amended Complaint under Fed. R. Civ. P. 12(b)(6). A memorandum of points and authorities in support of this motion and a proposed order are attached for the Court's consideration.

Date:   July 20, 2023

Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

STEPHANIE E. LITOS
Deputy Attorney General
Civil Litigation Division

*/s/ Christina Okereke*
CHRISTINA OKEREKE [219272]
Chief, Civil Litigation Division Section II

*/s/ Rachel B. Gale*
RACHEL B. GALE [90003972]
BURTH G. LÓPEZ [976981]
Assistant Attorneys General
400 6th Street, NW
Washington, D.C. 20001

(202) 735-7458
(202) 716-6658
rachel.gale@dc.gov
burth.lopez@dc.gov

*Counsel for Defendant District of Columbia*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TEJAN BAH,<br><br>       *Plaintiff*,<br><br>v.<br><br>DISTRICT OF COLUMBIA, *et al.*,<br><br>       *Defendants*. | Civil Action No. 23-CV-01248 (JDB) |

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT DISTRICT OF COLUMBIA'S PARTIAL MOTION TO DISMISS THE AMENDED COMPLAINT

**INTRODUCTION**

This lawsuit arises from an altercation that occurred while Plaintiff Tejan Bah was incarcerated as a pretrial detainee in the D.C. Jail, where an inmate assaulted Plaintiff with a knife. In the Amended Complaint, Plaintiff asserts the following claims against Defendant District of Columbia (the District): violation of his Fifth Amendment due process rights under 42 U.S.C. § 1983 (Count I); negligence (Counts II–III); and negligent supervision and training (Count IV). *See* Am. Compl. The Court should dismiss Counts I and IV of the Amended Complaint. The Court should dismiss Count I because Plaintiff fails to plausibly allege the District's municipal liability as required under 42 U.S.C. § 1983 and his claim falters on the merits. And the Court should dismiss Count IV because Plaintiff does not sufficiently state a claim for negligent supervision and training.

**FACTS**

Plaintiff Tejan Bah was a pretrial detainee incarcerated in the D.C. Jail. Am. Compl. ¶ 5, ECF No. 7. On November 12, 2022, Plaintiff was involved in an argument with another inmate.

*Id.* ¶ 8.  The argument allegedly started because the other inmate wanted to "cut the line to use the phone on the cell block" in Housing Unit Northwest 2 (NW2).  *Id.*  Later that day, around 5:15 p.m., the same inmate approached Plaintiff in the bathroom with a metal knife.  *Id.* ¶ 11.  According to Plaintiff, the bathroom is an area where inmates are not supervised by corrections officers.  *Id.*  The inmate stabbed Plaintiff multiple times, causing injuries to Plaintiff's lower back, right eye, and abdomen.  *Id.* ¶¶ 13–14.

Plaintiff brings claims against the District and John Doe correctional officers for violation of his due process rights under the Fifth Amendment, negligence, and negligent supervision and training.  Plaintiff alleges that the District, "as a custom and de facto policy failed to train its correctional officers concerning contraband control; . . . failed to supervise them adequately; and failed to staff housing units with an adequate level of staffing so as to ensure a reasonable level of inmate supervision."  *Id.* ¶ 53.  He contends that during a November 2021 visit to the D.C. Jail, the United States Marshal Service (USMS) observed the scent of marijuana, "which provides indications of the introduction of contraband."  *Id.* ¶ 27.  He also asserts that a July 2021 audit report by the D.C. Office of the Inspector General (OIG) identified surveillance camera malfunctions at the time.  *Id.* ¶ 37.  Plaintiff further alleges that several other inmates were injured in a similar manner to him over the course of ten years, the most recent of which occurred four and a half years before Plaintiff's incident.  *See id.* ¶¶ 41–48.

## STANDARD OF REVIEW

To survive a motion to dismiss, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007).  In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court set forth a "two-pronged

approach" for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6). 556 U.S. at 679. Although a court generally must consider a plaintiff's factual allegations as true, the court must first "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Thus, the basic pleading standards "demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). If the court determines that the plaintiff has asserted "well-pleaded factual allegations," it "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. But the court need not draw inferences in favor of the non-movant "if such inferences are unsupported by the facts set out in the complaint." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

## ARGUMENT

### I.  Plaintiff's Constitutional Claim Fails (Count I).

Plaintiff offers no facts showing that a municipal custom or policy or deliberate indifference of the District was the moving force behind the incident that resulted in his injuries. And Plaintiff does not satisfy the requirement of alleging a predicate constitutional violation. Thus, Plaintiff fails to plausibly allege a claim under § 1983 against the District, so the Court should dismiss Count I of the Amended Complaint against the District.

#### A.  Plaintiff Fails to Plausibly Allege the District's Municipal Liability.

Municipalities are subject to liability under § 1983 when their policies "3ubject[t], or caus[e] to be subjected, any citizen of the United States to the deprivation of any rights . . . secured by the Constitution." *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691–92 (1978) (quoting 42 U.S.C. § 1983). In considering whether a plaintiff has stated a claim for

municipal liability under § 1983, the district court must conduct a two-step inquiry: first, the court must determine whether the complaint states a claim for a predicate constitutional violation; second, if so, the court must determine whether the complaint states a claim that a custom or policy of the municipality caused the violation. *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003). Thus, "*respondeat superior* or vicarious liability will not attach under Section 1983" to a municipality. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell*, 436 U.S. at 694–95).

A viable claim for municipal liability exists only if a plaintiff shows "an 'affirmative link' such that a municipal policy was the 'moving force' behind the constitutional violation." *Baker*, 326 F.3d at 1306–07 (citations omitted). Thus, a plaintiff must allege facts establishing that the constitutional violation resulted from: (1) "the explicit setting of a policy by the government that violates the Constitution," (2) "[t]he action of a policy maker with the government," (3) "the adoption through a knowing failure to act by a policy maker of actions by his subordinates that are so consistent that they have become custom," or (4) "the failure of the government to respond to a need (for example, training of employees) in such a manner as to show deliberate indifference to the risk that not addressing the need will result in constitutional violations." *Id.* The "first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton*, 489 U.S. at 385.

> 1. **Plaintiff Has Not Shown That a Violation of His Fifth Amendment Rights Resulted from a Municipal Policy or Custom.**

"When a plaintiff seeks to establish 'custom and policy' municipal liability under § 1983 in the absence of an express policy, [he] must allege 'concentrated, fully packed, precisely delineated scenarios' as proof that an unconstitutional policy or custom exists." *Page v.*

4

*Mancuso*, 999 F. Supp. 2d 269, 284 (D.D.C. 2013) (quoting *Parker v. District of Columbia*, 850 F.2d 708, 712 (D.C. Cir. 1988) (internal citations and quotations omitted)). "To clear this high hurdle, plaintiffs ordinarily couch 'custom or practice' liability on allegations of 'practices so persistent and widespread as to practically have the force of law.'" *Id.* (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). Indeed, a plaintiff must allege a "pervasive practice of the city officials, which although not officially adopted, was so common and settled as to be considered a custom or policy." *Ryan v. District of Columbia*, 306 F. Supp. 3d 334, 346 (D.D.C. 2018) (quoting *Coleman v. District of Columbia*, 828 F. Supp. 2d 87, 91–92 (D.D.C. 2011) (cleaned up). A custom or policy for purposes of municipal liability must "reflect[] a 'deliberate' or 'conscious' choice by a municipality." *Powers-Bunce v. District of Columbia*, 659 F. Supp. 2d 173, 181 (D.D.C. 2009) (quoting *City of Canton*, 489 U.S. at 378)

      Plaintiff here fails to clear this "high hurdle." *Page*, 999 F. Supp. 2d at 284. Despite the labels Plaintiff uses, he does not allege a pervasive practice that is so "widespread as to practically have the force of law." *Id.* Plaintiff contends that the following constitute a custom or policy: understaffing, indications of the presence of contraband in the D.C. Jail, generalized security lapses, a small percentage of surveillance cameras that were malfunctioning over a year before Plaintiff was injured, and eight prior instances of inmate injuries caused by contraband weapons over ten years. *See* Am. Compl. ¶¶ 21–22, 27, 37, 40–48. But this is not enough—Plaintiff must "identify [a] specific policy or custom, the enforcement of which caused the [his] injury." *Young v. District of Columbia*, 107 F. Supp. 3d 69, 81 (D.D.C. 2015). Yet he does not.

      Instead, Plaintiff grasps at a policy or custom based on alleged generalized deficiencies and inferences drawn from reports published a year before the incident giving rise to his injuries and distinguishable prior instances of inmate injuries caused by contraband weapons. Indeed,

5

the eight prior incidents alleged occurred over a ten-year period, the most recent incident occurred four-and-a-half years before Plaintiff's incident, and most of the attacks occurred in inmates' cells, not in a bathroom. *See* Am. Compl. ¶¶ 41–48.  These allegations fall short of showing a pervasive policy or custom. *See Buie v. District of Columbia*, No. 16-CV-1920 (CKK), 2021 WL 4061142, at *18 (D.D.C. Sept. 7, 2021) ("Such disjointed evidence fails to demonstrate 'a persistent and widespread practice' . . . 'that characteristically was repeated under like circumstances.'" (quoting *Cox v. District of Columbia*, 821 F. Supp. 1, 17 (D.D.C. 1993))); *McKnight v. District of Columbia*, 412 F. Supp. 2d 127, 133 (D.D.C. 2006) ("[E]vidence of approximately thirteen various other incidents of excessive force [was] insufficient to establish a 'pervasive pattern . . . of excessive force.'" (quoting *Carter v. District of Columbia*, 195 F. 2d 116, 123 (D.C. Cir. 1986))).  And speculation that these events "make up a fraction of the actual number of" similar events, Am. Compl. ¶ 49, is a conclusion that is not entitled to an assumption of truth, *Iqbal*, 556 U.S. at 679, and cannot support an allegation of "a persistent and widespread practice," *Cox*, 821 F. Supp. At 17.

Furthermore, inadequate training can only be the basis for municipal liability under the custom or policy theory where "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. at 385.  Plaintiff alleges a failure to train corrections officers on contraband control, Am. Compl. ¶ 53, but does not offer any facts to support this conclusory assertion, *see* Am. Compl.  Indeed, Plaintiff's only allegations supporting any failure to train corrections officers are conclusions Plaintiff has drawn from a 2021 memorandum issued by the U.S. Marshals Service, and these allegations are unrelated to contraband control.  *See* Am. Compl. ¶¶ 29–30.  At bottom,

Plaintiff does not contend that enforcement of a specific, unofficially adopted but pervasive practice caused his injuries.  *See Young*, 107 F. Supp. 3d at 81.

What is more, Plaintiff does not plausibly allege any connection between the incident that caused his injuries and a supposed unconstitutional policy.  A complaint alleging municipal liability against the District under the custom or policy theory "must also state facts 'from which a link between [the] alleged misconduct and a D.C. policy, custom, or practice may be reasonably inferred.'"  *Page*, 999 F. Supp. 2d at 284 (quoting *Brown v. Wilhelm,* 819 F. Supp. 2d 41, 44 (D.D.C. 2011)).  Plaintiff fails to connect the dots between his attack and an unconstitutional policy.  Indeed, Plaintiff's bare allegation that the District "failed to train its correctional officers concerning contraband control; . . . failed to supervise them adequately; and failed to staff housing units with an adequate level of staffing so as to ensure a reasonable level of inmate supervision," Am. Compl. ¶ 53, is nothing but a "'naked assertion[]' devoid of 'further factual enhancement,'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  Thus, Plaintiff's § 1983 claim alleging facts that are "merely consistent with" the District's liability "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Iqbal*, 556 U.S. at 678 (citation omitted).  And without alleging that a municipal custom or policy caused his injuries, Plaintiff improperly attempts to hold the District liable under a *respondeat superior* theory, which he cannot do.  *See Smith v. District of Columbia*, 306 F. Supp. 3d 223, 256 (D.D.C. 2018).  Accordingly, Plaintiff fails to allege municipal liability under a custom or policy theory.

**2.     Plaintiff Has Not Shown That a Violation of His Fifth Amendment Rights Resulted from Deliberate Indifference.**

Plaintiff's municipal liability claim also fails under the deliberate indifference theory.  *See Baker*, 326 F.3d at 1306.  "Deliberate indifference is an objective standard that means that

7

when a city is 'faced with actual or constructive knowledge that its agents will probably violate constitutional rights, the city may not adopt a policy of inaction.'" *Tyson v. District of Columbia,* No. 20-CV-1450 (RC), 2021 WL 4860685, at *12 (D.D.C. Oct. 19, 2021) (quoting *Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004)).[1] "It is 'a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.'" *Id.* at *12 (quoting *Connick*, 563 U.S. at 61). "A less stringent standard of fault for a failure-to-train claim 'would result in *de facto respondeat superior* liability on municipalities.'" *Connick*, 563 U.S. at 62 (quoting *City of Canton*, 489 U.S. at 392).

"One approach to proving deliberate indifference is by demonstrating a municipality's failure to adequately train its employees." *Bell v. District of Columbia,* 82 F. Supp. 3d 151, 156 (D.D.C. 2015). But the standard for this approach is especially stringent—"a municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* (quoting *Connick*, 563 U.S. at 61) (alterations omitted). To meet this demanding standard, "the plaintiff must first have articulated 'a specific form of misconduct' at issue." *Tyson*, 2021 WL 4860685, at *12 (quoting *Robinson v. District of Columbia*, 736 F. Supp. 2d 254, 265 (D.D.C. 2010)). Only "when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights[] [may] the city . . . be deemed deliberately indifferent if the policymakers choose to retain that program." *Connick*, 563 U.S. at 61; *see Costello v. District of Columbia*, 826 F. Supp. 2d 221, 225–26 (D.D.C. 2011) ("[P]laintiffs . . . have pleaded no *facts* indicating that the District's decisionmakers knew or should have known of any deficiencies in the training

---

[1] The analysis of whether a plaintiff has plausibly alleged deliberate indifference based on a municipality's failure to respond to a pattern of misconduct overlaps with the analysis of whether policymakers knowingly ignored a custom under the third *Baker* test. *Tyson v. District of Columbia,* No. 20-CV-1450 (RC), 2021 WL 4860685, at *13 (D.D.C. Oct. 19, 2021).

of its police officers concerning the execution of search warrants such that the District could be deemed 'deliberately indifferent' towards citizens' constitutional rights . . . ." (citing *Connick*, 563 U.S. at 61)).  And "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 69 (quoting *Bd. Of Cnty. Comm'rs of Bryan Cnty. V. Brown*, 520 U.S. 397, 409 (1997)).  Plaintiff thus must show that by failing to train DOC officers on contraband control, the District "effectively turned a blind eye to an obvious risk that [its] practices" would result in a violation of Plaintiff's Fifth Amendment rights.  *Jackson v. District of Columbia*, 327 F. Supp. 3d 52, 72 (D.D.C. 2018).

      Here, Plaintiff does not meet the stringent standard required to show the District's municipal liability on a failure to train theory.  Nowhere in the Complaint does Plaintiff plausibly allege the District's deliberate indifference to constitutional violations.  *See Jackson*, 327 F. Supp. 3d at 73 (finding that "a city's mere failure to adopt best practices" does not amount to deliberate indifference (cleaned up)).  Plaintiff does not articulate "a specific form of misconduct" at issue, *Bell*, 82 F. Supp. 3d at 157–58, or otherwise show that the District was aware of a lapse in training to which it turned a blind eye, *see Jackson*, 327 F. Supp. 3d at 72 ("Jackson must show that the District, by tolerating defective use-of-force investigations, effectively turned a blind eye to an obvious risk that those practices would result in officers' use of excessive force.").  Plaintiff does not allege that any of the eight past incidents involving contraband weapons was the result of inadequate training of officers regarding contraband.  *See* Am. Compl. ¶¶ 41–48.  Thus, Plaintiff has not shown a "pattern of similar constitutional violations by untrained employees." *Connick*, 563 U.S. at 62.  And only two of these eight past

9

assaults occurred in a bathroom like the inmate attack on Plaintiff, and those two incidents occurred 11 and 8 years before Plaintiff's incident, respectively. Am. Compl. ¶¶ 45–46.

What is more, the USMS and OIG reports Plaintiff cites are not particularly relevant to the incident at issue here. *See Bell*, 82 F. Supp. 3d at 158 (to plausibly allege deliberate indifference theory, plaintiff must allege "specific form of misconduct" of which District officials had notice but failed to address and correct). The USMS's report concerned a broad range of alleged conditions in the Jail, *see* Am. Compl. ¶¶ 24–31, and only made generalized accusations that "[e]ntrance screening procedures . . . were inconsistent and sloppy,'" *id.* ¶ 26. And Plaintiff concedes that DOC disputed the USMS's allegations. *See id.* at 5 n.2. The OIG's report is even less on point—that report concerned the use of force by staff against inmates, not inmate-on-inmate assaults. *See id.* ¶¶ 34–36. Plaintiff also does not connect the OIG's finding about non-working surveillance cameras to his assault, and surveillance cameras would not be placed in a bathroom for obvious privacy reasons in any case. *See id.* ¶ 37.

Moreover, Plaintiff seems to assume—without offering any supporting facts—that the metal knife used by his inmate-assailant was contraband smuggled in from outside the facility. *See* Am. Compl. The weapon may very well have been fashioned by the inmate inside the jail, or the inmate may have somehow gotten his hands on a knife within the facility. Thus, Plaintiff has not shown that a failure to train officers on contraband control was the moving force that caused his assault to occur.

Because Plaintiff has not plausibly alleged the District's municipal liability, the Court should dismiss Count I of the Amended Complaint against the District.

10

**B.       Plaintiff Fails to State a Fifth Amendment Claim.**

Plaintiff's Fifth Amendment claim against the District fails because he does not plausibly allege corrections officers' subjective knowledge of a substantial risk of harm to Plaintiff. Under the Fifth Amendment, "a pretrial detainee, not yet found guilty of any crime, may not be subjected to punishment of any description." *Hardy v. District of Columbia*, 601 F. Supp. 2d 182, 188 (D.D.C. 2009) (quoting *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992)) (citations omitted). Because of this, "[c]ourts have consistently held that [the] right belonging to pretrial detainees [under the Fifth Amendment] is *at least as great* as the analogous Eighth Amendment right." *Id.* (quoting *Powers-Bunce*, 479 F. Supp. 2d at 153) (alteration omitted). Accordingly, courts apply Eighth Amendment principles for determining whether a plaintiff's due process rights under the Fifth Amendment have been violated. *See id.*

The Eighth Amendment guarantees the "right to 'humane conditions'" and imposes a duty upon corrections officers to "take reasonable measures to guarantee the safety of inmates." *Id.* at 189 (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)) (citations omitted). And while this duty extends to protecting inmates "from violence at the hands of other [inmates]," *id.* (quoting *Cortes–Quinones v. Jimenez–Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988)), "[p]rison officials cannot be held answerable every time an inmate in an overcrowded prison commits an act of violence," *Marsh v. Barry*, 824 F.2d 1139, 1145 (D.C. Cir. 1987). To hold the District liable here, Plaintiff "must show (1) 'that he is incarcerated under conditions posing a substantial risk of serious harm' and (2) that a prison official acted with 'deliberate indifference' to protect the prisoner from that harm." *Hardy*, 601 F. Supp. 2d at 189 (quoting *Farmer*, 511 U.S. at 834).

Here, even assuming that Plaintiff has sufficiently alleged the first prong, Plaintiff fails to satisfy the second prong of the deliberate indifference standard. To show that a D.C. Jail official

11

acted with deliberate indifference, Plaintiff must allege facts showing that the official "had 'subjective' knowledge of the risk that he then disregarded." *Id.* (citing *Farmer*, 511 U.S. at 837); *see Powers-Bunce*, 479 F. Supp. at 156.  But Plaintiff fails to allege that anyone at the D.C. Jail was aware of any risk to him and then disregarded it.  Indeed, Plaintiff alleges that D.C. Jail staff should have observed the argument between Plaintiff and the inmate who later assaulted him, Am. Compl. ¶ 8, and that this inmate had "previously stabbed at least two other jail residents," *id.* ¶ 9.  But Plaintiff does not allege that anyone at the D.C. Jail did have knowledge of the argument or the other inmate's alleged prior acts.  "Should have" and "would have" is not the same as "did."  *See id.* ¶¶ 8–9.  Because Plaintiff does not allege subjective knowledge, Plaintiff fails to show that anyone at the D.C. Jail acted with deliberate indifference to a substantial risk of harm to him.  Therefore, Plaintiff has not adequately alleged a Fifth Amendment violation, and the Court should dismiss Count I of the Amended Complaint.

## II.     The Court Should Dismiss Count IV for Failure to Plausibly Allege Negligent Supervision and Training.

"To prevail on a claim of negligent training and supervision under D.C. law, a plaintiff must 'show that an employer knew or should have known its employee behaved in a dangerous or otherwise incompetent manner, and that the employer, armed with that actual or constructive knowledge, failed to adequately supervise the employee.'"  *Blakeney v. O'Donnell*, 117 F. Supp. 3d 6, 21 (D.D.C. 2015) (quoting *District of Columbia v. Tulin,* 994 A.2d 788, 794 (D.C. 2010) (citations omitted)).  Here, Plaintiff's allegations fail to plausibly allege the District's negligent supervision of correctional staff.  *See* Am. Compl. ¶¶ 66–72; *Blakeney*, 117 F. Supp. 3d 21.  "The bulk of the complaint instead consists of conclusory statements that the District failed properly to supervise and to train the officers at issue without reference to *any* of the necessary legal elements."  *Spiller v. District of Columbia*, 302 F. Supp. 3d 240, 255 (D.D.C. 2018).

12

Plaintiff does not identify any employee who behaved in a "dangerous or otherwise incompetent manner." *Blackeney*, 117 F. Supp. 3d at 21; *see* Am. Compl.  Nor does Plaintiff allege that the District had notice of such behavior and failed to properly supervise its employees—Plaintiff's references to the prior eight instances of inmate injuries caused by contraband weapons over ten years, the OIG audit, and the actions of the U.S. Marshals Service do not support an allegation that the District had knowledge of "dangerous or otherwise incompetent" behavior specific to contraband searches, supervision of inmate movement, or safe housing practices.  *Blackeney*, 117 F. Supp. 3d at 21; *see* Am. Compl.  And Plaintiff's remaining bald allegations that officers at the D.C. Jail were inadequately supervised and trained are insufficient, *see* Am. Compl. ¶¶ 69–71, because conclusory allegations are "not entitled to the assumption of truth," *Iqbal*, 556 U.S. at 679.  Accordingly, Plaintiff fails to state a claim for negligent supervision and training, and the Court should dismiss Count IV of the Amended Complaint.

## CONCLUSION

For these reasons, the Court should grant the District's motion and dismiss Counts I and IV of the Amended Complaint with prejudice.

Date:   July 20, 2023

Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

STEPHANIE E. LITOS
Deputy Attorney General
Civil Litigation Division

*/s/ Christina Okereke*
CHRISTINA OKEREKE [219272]
Chief, Civil Litigation Division Section II

/s/ *Rachel B. Gale*
RACHEL B. GALE [90003972]
BURTH G. LÓPEZ [976981]
Assistant Attorneys General
400 6th Street, NW
Washington, D.C. 20001
(202) 735-7458
(202) 716-6658
rachel.gale@dc.gov
burth.lopez@dc.gov

*Counsel for Defendant District of Columbia*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TEJAN BAH,<br><br>      *Plaintiff*,<br><br>v.<br><br>DISTRICT OF COLUMBIA, *et al.*,<br><br>      *Defendants*. | Civil Action No. 23-CV-01248 (JDB) |

## ORDER

Upon consideration of Defendant District of Columbia's Motion to Dismiss Counts I and IV of the Amended Complaint, the memorandum of points and authorities in support, any opposition and reply thereto, and the entire record herein, it is this _____ day of _____ 2023, hereby

**ORDERED** that Defendant's Motion is **GRANTED**; and it is further

**ORDERED** that Counts I and IV of the Amended Complaint are **DISMISSED WITH PREJUDICE** as against Defendant District of Columbia.

**SO ORDERED**.

_____
JOHN D. BATES
United States District Judge

CC:    Deborah Golden, Esq.
          Geoffrey D. Allen, Esq.
          *Counsel for Plaintiff*

          Rachel B. Gale
          Burth G. López
          Assistant Attorneys General
          *Counsel for Defendant District of Columbia*