UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| TEJAN BAH | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | 23-cv-01248-JDB |
| | ) | |
| THE DISTRICT OF COLUMBIA, et al., | ) | |
| | ) | |
| *Defendants.* | ) | |

**PLAINTIFF TEJAN BAH'S OPPOSITION TO DEFENDANT DISTRICT OF COLUMBIA'S PARTIAL MOTION TO DISMISS**

I. **Introduction**

While Mr. Bah was a pretrial detainee at the D.C. Jail, another inmate—one with a history of stabbing other detainees—repeatedly stabbed him in the eye. Compl. ¶¶ 8-16. He brought this lawsuit seeking recompense for the violations of his constitutional and common law rights. While not challenging the claims premised on negligent contraband control and negligent supervision of inmates, the District has moved to dismiss Mr. Bah's Fifth Amendment Due Process claim and his claim of negligent supervision and training of officers. The District is wrong on both arguments.

II. **Governing Legal Standards**

The District of Columbia correctly recites the familiar standards for motions to dismiss. But a plaintiff does not have to prove his case at the outset. Rather, a plaintiff is

1

entitled to "the benefit of all inferences that can be derived from the facts alleged." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)). All a complaint must do is "*raise a reasonable expectation that discovery will reveal evidence.*" *Ctr. for Inquiry, Inc. v. Walmart, Inc.*, Nos. 20-CV-392, 20-CV-530, 2022 D.C. App. LEXIS 328, at *23 (Sep. 29, 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007)) (emphasis added by Court of Appeals). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (cleaned up). "If a complaint's factual allegations are sufficient, the case must not be dismissed even if the court doubts that the plaintiff will ultimately prevail." *Poola v. Howard Univ.*, 147 A.3d 267, 276 (D.C. 2016) (internal quotations and citations omitted).

### III. Legal Argument

#### A. Mr. Bah Has Properly Alleged a Constitutional Violation Caused by the District's Customs.

Federal law provides a cause of action against the District, for the deprivation of a federal constitutional or statutory right. 42 U.S.C. § 1983. To hold the District liable for his assault, Mr. Bah must show how that the District's policy or custom was the "moving force" behind the constitutional violation he suffered. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694-95 (1978); *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003). "To survive a motion to dismiss on a § 1983 claim for municipal liability, the plaintiff must allege plausible facts that state a claim: (1) for a predicate constitutional

2

violation, and (2) that the municipality's policy or custom caused the constitutional violation." *Tyson v. Dist. of Columbia, Civil Action No.:20-1450*, 2021 U.S. Dist. LEXIS 200647, at \*12 (D.D.C. Oct. 19, 2021) (citing *Baker*, 326 F.3d at 1306.) "Each inquiry is separate and serves different purposes." *Baker*, 326 F.3d at 1306.

### 1. Mr. Bah Suffered a Constitutional Harm.

First the Court must determine whether Mr. Bah, in fact, suffered a constitutional violation. *See id*. "All that is being established at this stage is that there is some constitutional harm suffered by the plaintiff, not whether the municipality is liable for that harm." *Id*.

Mr. Bah was a pretrial detainee. And so his claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fifth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979). Due process forbids conditions of confinement that "amount to punishment of the detainee." *Id*. at 535 n.16. A condition may amount to punishment if it "is not reasonably related to a legitimate goal—if it is arbitrary or purposeless." *Id*. at 539 n.16. The Supreme Court has clarified that pretrial detainees are subject to a less exacting standard than convicted prisoners are under the Eighth Amendment. Under the Fifth Amendment, a plaintiff needs to produce "only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015). While *Kingsley* was about staff-on-detainee violence, courts both in and outside the D.C. Circuit have held that for any claim arising

out of the Fifth Amendment "a pre-trial detainee need only show that prison conditions are objectively unreasonable." *Banks v. Booth*, 468 F. Supp. 3d 101, 110 (D.D.C. 2020) (collecting cases). *See also C.G.B. v. Wolf*, 464 F. Supp. 3d 174, 211 n.31 (D.D.C. 2020) (finding the same standard applies for civil immigration detainees).

Allowing another prisoner—especially one who had stabbed others—to stab Mr. Bah in the eye is an objectively unreasonable condition.

### 2. The Violation Is Directly Traceable to the District's Customs.

Having determined that Mr. Bah did suffer a constitutional violation, this Court must take the second step of the analysis—determining whether the violation stemmed from some city policy. *Baker*, at 1306. There are four potential ways of showing a municipal policy: (1) "the explicit setting of a policy by the government that violates the Constitution," (2) "the action of a policy maker within the government," (3) "the adoption through a knowing failure to act by a policy maker of actions by his subordinates that are so consistent that they have become custom," or (4) "the failure of the government to respond to a need . . . in such a manner as to show 'deliberate indifference' to the risk that not addressing the need will result in constitutional violations." *C.G.B.*, 464 F. Supp. 3d at 211 n.31. (cleaned up). Mr. Bah points to the third and fourth methods.

#### a. Within the DC DOC, There Was a Developed Custom of Ignoring Threats to Detainee Safety.

To successfully demonstrate the adoption of a custom under the third *Baker* method, Mr. Bah must show "a persistent, pervasive practice of the city officials . . .,

which although not officially adopted, was so common and settled as to be considered a custom or policy." *Coleman v. District of Columbia*, 828 F. Supp. 2d 87, 92 (D.D.C. 2011) (quoting *Carter v. District of Columbia*, 795 F.2d 116, 125, 254 U.S. App. D.C. 71 (D.C. Cir. 1986)). Generally, a plaintiff must include in the complaint "specific incidents that plausibly show a custom or pattern of behavior." Patrick v. District of Columbia, 179 F. Supp. 3d 82, 87 (D.D.C. 2016). "Pleadings that point to other specific incidents provide the 'factual heft' to corroborate the alleged custom and bolster the plausibility of the complaint." *Tyson*, 2021 U.S. Dist. LEXIS 200647, at *26

This requirement does not mean, as the District argues, that a plaintiff must have multiple examples of the identical incident. Mr. Bah's complaint only must "*raise a reasonable expectation that discovery will reveal evidence.*" *Ctr. for Inquiry, Inc. v. Walmart, Inc.*, Nos. 20-CV-392, 20-CV-530, 2022 D.C. App. LEXIS 328, at *23 (Sep. 29, 2022) (quoting *Twombly*, 550 U.S. at 545 (2007)). "[G]eneral allegations can be sufficient so long as they are both factual and plausible." *Tyson*, 2021 U.S. Dist. LEXIS 200647, at *27-28. There is no numerical formula to be applied, "rather, the level of corroboration needed depends on the context and similarity." *Id*. (citing *Carter v. District of Columbia*, 795 F.2d 116, 124 (D.C. Cir. 1986)).

To argue that Mr. Bah has not alleged enough detail to get past its motion to dismiss, the District cites several cases, all inapposite. In *Powers-Bunce*, a case seeking to hold the city responsible for the suicide of a man in police custody, the plaintiff only claimed that the police officers did not follow policy, not that there was a custom of not following policy. *Powers-Bunce v. District of Columbia*, 659 F. Supp. 2d 173, 181 (D.D.C.

2009). In *Young*, where the plaintiff was shot in the back by police officers, he had not alleged that there was a custom at all. *Young v. District of Columbia*, 107 F. Supp. 3d 69 (D.D.C. 2015). The *Page v. Mancuso* case, addressing strip searches in the D.C. Jail, involved a similarly deficient complaint. *Page v. Mancuso*, 999 F. Supp. 2d 269, 285 (D.D.C. 2013). The plaintiff in that case also did not allege a policy or describe any other incidents of strip searching. *Id.* Again, in *Ryan*, the plaintiff—a firefighter alleging retaliation for engaging in constitutionally protected speech— did not even allege a custom or policy, even in the most conclusory terms. *Ryan v. District of Columbia*, 306 F. Supp. 3d 334, 342 (D.D.C. 2018)

Mr. Bah's complaint is much more like the situation in Tyson. In *Tyson*, the plaintiff alleged he was overdetained by the D.C. Department of Correction, when he should have been timely transferred to the custody of the Court Services and Offender Supervision Agency. Id. In that case, the court held that he had sufficiently alleged a policy of such overdetention by describing five other individuals who had been similarly treated and including general descriptions from local defense attorneys. *Tyson*, 2021 U.S. Dist. LEXIS 200647, at *27.

Here, Mr. Bah alleges District customs of failing to train correctional officers on contraband control, failure to supervise staff, and failing to have adequate staffing. Compl. ¶ 54. To raise a reasonable expectation that discovery will support a custom of failure to train regarding contraband control, Mr. Bah points to the U.S. Marshals Service memorandum describing multiple observed instances of failure to control contraband,

6

including the Jail not having proper entrance screening procedures and being full of the smell of marijuana, an unmistakable sign that contraband was prevalent. Compl. ¶¶ 24-27.

To raise a reasonable expectation that discovery will support a custom of failure to supervise staff, Mr. Bah notes that same Marshals Service memorandum noted that people held in the jail had undocumented injuries, demonstrating that staff generally were not observing inmates or addressing violence. Compl. ¶ 28. That memorandum also noted that supervisors were uninterested in any of the myriad problems the Marshals identified. Compl. ¶¶ 31-32. He described the OIG report which found many malfunctioning security cameras and a failure to allocate funding to fix them. Compl. ¶ 37-38.

To raise a reasonable expectation that discovery will support a custom of inadequate jail staffing, he has alleged that the bathrooms in Unit NW2 were unsupervised. 12. He points to an official DC government publication describing the jail as "chronically understaffed." 21-22. He points to a district court decision discussion the staffing shortages. 21, n1. Again, he described the OIG report which found many malfunctioning security cameras and a failure to allocate funding to fix them. Compl. ¶ 37-38. As he described, these failures also exacerbated the staffing shortages. *Id*.

To raise a reasonable expectation that discovery will generally support his claims, he described previous assaults, pointing to the free-flowing nature of contraband and the failure of Jail staff to take appropriate protective measures. Compl. ¶¶ 39-49.

At this stage, given the allegations in the complaint, it is more than reasonable to expect that discovery will yield evidence that the District has pervasive and well-established customs of ignoring contraband, understaffing, and failing to supervise Jail

7

staff. And there is no leap of logic required to understand that if there were no contraband, and the Jail had a properly supervised fully-staffed cohort of correctional officers, a man who had previously stabbed other Jail residents would not have been able to obtain a weapon, follow a man he had argued with that day into the bathroom, and stab him in the eyeball.

### b. The District Also Responded with Deliberate Indifference to the Known Threat Mr. Bah's Attacker Posed.

The fourth *Baker* method of establishing municipal liability is showing that the government showed deliberate indifference by not responding to a risk of constitutional violations. *Baker*, at 1306. Allegations that officials knew of a risk to a specific person and, with deliberate indifference, did nothing, is enough to survive a motion to dismiss. *See Brown v. District of Columbia*, 514 F.3d 1279, 1284 (D.C. Cir. 2008).

This deliberate indifference, not to be confused with the Eighth Amendment standard, is "an objective inquiry… whether the municipality knew or should have known of the risk of constitutional violations but did not act." *Harris v. Gov't of the D.C.*, Civil Action No. 18-2390 (ABJ), 2019 U.S. Dist. LEXIS 131297, at *9 (D.D.C. Aug. 6, 2019) (cleaned up). This objective deliberate indifference may be shown not only failure to train employees, but also failure to respond to repeated complaints about misconduct. *Id*.

"Although the state is not obliged to insure an assault-free environment, a prisoner has a constitutional right to be protected from the unreasonable threat of violence from his fellow inmates." *Morgan v. District of Columbia*, 824 F.2d 1049, 1057 (D.C. Cir. 1987). In evaluating the basis for constitutional liability in another case of inmate-on-inmate assault,

the *Morgan* court, reviewing a judgment for the plaintiff under the stringent notwithstanding the verdict standard, held that a record as a whole may "support[] a finding that as a matter of practice, the District was deliberately indifferent to inmates' security in the operation of the Jail" and that "the District's deviation from any reasonable standard of care was obvious and flagrant." *Id*. at 1058 (cleaned up).

Here, given both the Mr. Bah's allegations about widespread contraband flow and violence inside the D.C. Jail and the District's knowledge that his attacker had stabbed at least two other Jail residents, that the District knew the attacker posed a constitutional danger and chose to not address that danger in any way.

### B. The Constitutional Claim Against the As-yet Unknown Officers Cannot Be Dismissed

Defendant barely mentions the John Doe defendants, but these claims also survive a motion to dismiss. At this point, before discovery, Mr. Bah does not know the names of everyone whose malfeasance allowed his attacker to obtain weapons and attack him three times. But "this omission [of names] is not fatal at this pre-discovery phase of the proceedings" *Leonard v. George Wash. Univ. Hosp.*, 273 F. Supp. 3d 247, 255 (D.D.C. 2017). Rather, "unknown defendants should not be dismissed before discovery when discovery could reasonably help plaintiff to identify the unknown defendants." *Simmons v. District of Columbia*, 750 F. Supp. 2d 43, 45 (D.D.C. 2011).

### C. Mr. Bah Properly Alleged Negligent Supervision.

Given that all a Complaint must do is raise a reasonable expectation that discovery will reveal evidence, the burden for pleading a negligent failure to train is low. *See Ctr. for Inquiry, Inc*, 2022 D.C. App. LEXIS 328, at *23 (Sep. 29, 2022). To state a claim for negligent training, a complaint must contain facts supporting a negligence cause of action against a tortfeasor's employer, including a duty of care owed the plaintiff by the employer and a breach of that duty by the defendant causing plaintiff harm. *District of Columbia v. Hampton*, 666 A.2d 30, 35 (D.C. 1995); *see Lane v. District of Columbia*, 887 F.3d 480, 487 (D.C. Cir. 2018).

Here, Mr. Bah alleged that in the face of a pervasive history of contraband flow and violence in the D.C. Jail, notwithstanding the national standard of care that requires constant sight and sound supervision of all detainees, the District failed to train its correctional officers to properly control contraband and monitor the goings-on in the Jail. These allegations are "enough to raise a right to relief above the speculative level." *Close It! Title Servs. v. Nadel*, 248 A.3d 132, 138 (D.C. 2021) (quoting *OneWest Bank, F.S.B. v. Marshall*, 18 A.3d 715, 721 (D.C. 2011)).

None of the cases relied by the defendant analyze whether, in a negligent supervision case, an employer's required knowledge of dangerous or incompetent behavior must be that of an individual employee's or may be knowledge of a group of employees' dangerous or incompetent behavior. *See, e.g.,* B*rown v. Argenbright Sec., Inc.*, 782 A.2d 752, 760 (D.C. 2001) (analyzing whether plaintiff negligently supervised a

security guard accused of sexual assault, not whether plaintiff had failed to properly train security guards as a collective group).

Similar allegations have been allowed to proceed to discovery in other cases. For example, a claim that "the District of Columbia was "responsible for the hiring, training, supervision, monitoring and disciplining of the officers involved" in an arrest and handcuffing was enough to go to discovery. *James v. District of Columbia*, 869 F. Supp. 2d 119, 121 (D.D.C. 2012) (cleaned up). The *James* court noted that, unlike in *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009), nothing in a simple case like this suggested the plaintiff's claims were so implausible as to warrant dismissal and discovery would therefore not "unduly burden the District." *James*, 869 F. Supp. 2d at 122

Here as in *James*, the District is responsible for the hiring, training, supervision, monitoring, and disciplining of the correctional officers in the Jail. Mr. Bah alleged that there was a failure to train correctional officers to control contraband and supervise detainees. Compl. ¶¶ 67-72, He also alleged that the District knew that this was a problem. *Id.* That is all that is needed, and a dismissal of Count Four would likewise be improper.

### D. In the Alternative, This Court Should Grant Leave to Amend.

Federal Rule of Civil Procedure 15 makes clear that a request for leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15. Moreover, "[a]lthough the grant or denial of leave to amend is committed to a district court's discretion, it is an abuse of discretion to deny leave to amend unless there is sufficient reason, such as 'undue delay, bad faith, or dilatory motive, repeated failure to cure

security guard accused of sexual assault, not whether plaintiff had failed to properly train security guards as a collective group).

Similar allegations have been allowed to proceed to discovery in other cases. For example, a claim that "the District of Columbia was "responsible for the hiring, training, supervision, monitoring and disciplining of the officers involved" in an arrest and handcuffing was enough to go to discovery. *James v. District of Columbia*, 869 F. Supp. 2d 119, 121 (D.D.C. 2012) (cleaned up). The *James* court noted that, unlike in *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009), nothing in a simple case like this suggested the plaintiff's claims were so implausible as to warrant dismissal and discovery would therefore not "unduly burden the District." *James*, 869 F. Supp. 2d at 122

Here as in *James*, the District is responsible for the hiring, training, supervision, monitoring, and disciplining of the correctional officers in the Jail. Mr. Bah alleged that there was a failure to train correctional officers to control contraband and supervise detainees. Compl. ¶¶ 67-72, He also alleged that the District knew that this was a problem. *Id.* That is all that is needed, and a dismissal of Count Four would likewise be improper.

### D. In the Alternative, This Court Should Grant Leave to Amend.

Federal Rule of Civil Procedure 15 makes clear that a request for leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15. Moreover, "[a]lthough the grant or denial of leave to amend is committed to a district court's discretion, it is an abuse of discretion to deny leave to amend unless there is sufficient reason, such as 'undue delay, bad faith, or dilatory motive, repeated failure to cure

deficiencies by previous amendments, or futility of amendment.'" *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (quoting *Foman v. Davis*, 371 U.S. 178 (1962),cleaned up). None of those factors are present here.

IV. **Conclusion**

For the reasons above, this Court should deny the District's motion entirely and allow the case to proceed to discovery.

Dated: August 18, 2023.

Respectfully Submitted by,

/s/    *Deborah M. Golden*
DEBORAH M. GOLDEN
D.C. Bar No. 470578
700 Pennsylvania Ave. SE, 2nd Floor
Washington, DC 20003
Phone (202) 630-0332
Email:  dgolden@debgoldenlaw.com

GEOFFREY D. ALLEN
D.C. Bar No. 288142
1032 15th Street, NW
Suite 298
Washington, DC 20005
Phone: (202) 778-1167
Fax: (202) 898-2571
Email: GeoffreyAllen@verizon.net

*Counsel for Mr. Bah*