UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TEJAN BAH,

    Plaintiff,

    v.

DISTRICT OF COLUMBIA et al.,

    Defendants.

Civil Action No. 23-1248 (JDB)

## MEMORANDUM OPINION

While a pretrial detainee at the D.C. jail, plaintiff Tejan Bah was attacked and repeatedly stabbed by another inmate and suffered serious injuries. He sued the District of Columbia (the "District") and various unknown correctional officers, asserting a Fifth Amendment claim and three common-law claims based on defendants' alleged failure to control contraband and adequately supervise inmates at the jail. Before the Court is the District's motion to dismiss two counts of Bah's amended complaint. For the reasons that follow, the Court will deny the motion.

## Background

On November 12, 2022, while a pretrial detainee at the D.C. jail, Tejan Bah got into an argument with an inmate who wanted to cut the line to use a phone. Am. Compl. [ECF No. 7] ¶¶ 5–6, 8. No guard had "sight and sound" supervision over the phone area or this encounter. Id. ¶ 8. The other inmate had previously stabbed at least two people at the jail. Id. ¶ 9. Later that day, this inmate approached Bah in the bathroom, where inmates were left unsupervised. Id. ¶ 11. He was armed with a knife, which is prohibited contraband at the jail. Id. ¶ 12. He stabbed Bah repeatedly, including in the lower back, abdomen, and right eye. Id. ¶¶ 13–14.

Bah underwent emergency surgery on his eye, but his vision is still severely impaired.  Id.
¶¶ 15–16.  It is not clear that he will ever regain full sight.  Id. ¶ 16.  Bah has since been released
from custody.  Id. ¶ 5.

On March 14, 2023, Bah sued the District and various unknown correctional officers in
D.C. Superior Court seeking compensatory damages.  Sup. Ct. Docs. [ECF No. 1-2] at 2.  The
District removed the action to this Court and moved to dismiss two counts of Bah's complaint.
See Notice of Removal [ECF No. 1]; Def.'s Partial Mot. to Dismiss [ECF No. 6].  Bah then filed
an amended complaint.[1]  This operative complaint contains four counts: a Fifth Amendment due
process claim pursued under 42 U.S.C. § 1983 (Count One), as well as common-law claims for
negligence with respect to contraband control (Count Two), negligence with respect to supervision
of inmates (Count Three), and negligent supervision and training (Count Four).  See Am. Compl.
¶¶ 2, 50–72.  The first three claims are asserted against both the District and the correctional
officers; the last is asserted only against the District.  See id. ¶¶ 50–72.

As relevant here, the amended complaint alleges that "[D.C. Department of Corrections'
("DOC")] policies, practices, and unheeded warnings led to the attack."  Id. at 3.  In support of this
overarching charge, the complaint alleges the following:

(1) The D.C. jail has been "pervasively understaffed" and does not meet national standards
requiring correctional officers to maintain sight and sound supervision over all prisoners.  Id. at 3,
¶¶ 17–22.  The complaint cites an independent report noting that the D.C. jail is "chronically
understaffed" and a prior case in this District discussing staffing shortages.  Id. ¶ 21 & n.1.

---

[1] The Court will thus deny as moot the District's motion to dismiss Bah's initial complaint.  See HIV &
Hepatitis Pol'y Inst. v. U.S. Dep't of Health & Hum. Servs., Civil. A. No. 22-2604 (JDB), 2023 WL 6388932, at *7
n.2 (D.D.C. Sept. 29, 2023).

(2) In November 2021, the U.S. Marshals Service removed 400 individuals in its custody from the D.C. jail after conducting a surprise inspection of jail conditions.  Id. ¶ 24.  In a memorandum sent to DOC, the Marshals reported that entrance screening procedures at the jail were "inconsistent and sloppy" and that the jail was full of a "strong smoke and odor of marijuana"—evidence, the complaint alleges, that the introduction of contraband and the failure to address known contraband was a serious problem.  Id. ¶¶ 26–27.  The Marshals' memorandum also noted that inmates had observable injuries with no corresponding medical or incident reports, that some DOC staff were antagonizing inmates and directing them not to cooperate with the Marshals, and that supervisors appeared indifferent to these issues.  Id. ¶¶ 28–30.

(3) A July 2021 report by the D.C. Office of the Inspector General ("OIG") identified various deficiencies in DOC's operating procedures related to use-of-force incidents.  See id. ¶¶ 33–38.  This report noted, among other things, that lapses in security practices led to the use of force to regain control of inmates and that 15% of DOC's surveillance cameras either did not work correctly or did not work at all.  Id. ¶¶ 35, 37.

(4) DOC has for years had "excessively high levels of contraband weapons in circulation," leading to many serious armed assaults.  Id. ¶ 39; see id. ¶ 49.  The complaint recounts, in some detail, eight prior stabbings at the D.C. jail that occurred between May 2008 and April 2018.  See id. ¶¶ 41–48.  Two of these attacks occurred in a bathroom / shower area; the others largely occurred inside cells.  See id.  Most of these attacks occurred when inmates were unsupervised, and many involved oversights or mistakes by correctional officers.  See id.  These stabbings are the ones personally known to defense counsel; the complaint alleges that they represent only a fraction of the total number of armed assaults at the jail during this period.  Id. ¶ 49.

The District moved to dismiss Counts One and Four of the amended complaint.  See Def.'s Partial Mot. to Dismiss Am. Compl. [ECF No. 9] ("Mot.").[2]  As to Count One, the District argues that the complaint fails to plausibly allege (1) a Fifth Amendment violation and (2) the District's municipal liability for the alleged violation.  See Mot. at 3–12.  As to Count Four, the District contends that the complaint fails to plausibly allege that the District received actual or constructive notice that its correctional employees were behaving in a dangerous or otherwise incompetent manner.  See id. at 12–13.

Bah opposed the motion, see Pl.'s Opp'n to Mot. [ECF No. 12] ("Opp'n"), and the District filed a reply, see Reply in Supp. of Mot. [ECF No. 14] ("Reply").  The District's motion is thus fully briefed and ripe for decision.

## Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  In deciding such a motion, courts must "accept the [complaint's] factual allegations as true and draw all reasonable inferences in the plaintiff's favor," Sanchez v. Off. of State Superintendent of Educ., 45 F.4th 388, 395 (D.C. Cir. 2022), but need not credit legal conclusions "couched as factual allegations," Gulf Coast Mar. Supply, Inc. v. United States, 867 F.3d 123, 128 (D.C. Cir. 2017) (per curiam).

---

[2] The District states that its motion is only on behalf of itself, not the unnamed correctional officer defendants. Reply in Supp. of Mot. [ECF No. 14] at 10 n.3.

## Analysis

### I.     Count One—Fifth Amendment Claim

Bah asserts his Fifth Amendment claim under 42 U.S.C. § 1983.  "To sustain a claim against a municipality under § 1983, a plaintiff must show that the policy or custom of the municipality caused a violation of the plaintiff's constitutional rights."  Harvey v. District of Columbia, 798 F.3d 1042, 1049 (D.C. Cir. 2015) (citing Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 694–95 (1978)).  Accordingly, to survive a motion to dismiss, a § 1983 claim for municipal liability must plausibly allege both (1) "a predicate constitutional violation" and (2) "a custom or policy of the municipality [that] caused the violation."  Baker v. District of Columbia, 326 F.3d 1302, 1306 (D.C. Cir. 2003).  The District advances arguments as to both prongs of this inquiry.

#### A.  Fifth Amendment Violation

Bah alleges that DOC correctional officers violated the Fifth Amendment by failing to maintain a reasonably safe environment and failing to protect him from the other inmate's attack.  See Am. Compl. ¶¶ 50–54; Opp'n at 3–4.  "Prison officials have a duty to protect prisoners from violence at the hands of other prisoners."  Farmer v. Brennan, 511 U.S. 825, 833 (1994) (cleaned up).  The constitutional basis for a claim premised on a violation of that duty differs depending on an inmate's status: pretrial detainees' claims are based on the Fifth or Fourteenth Amendment's Due Process Clause,[3] while convicted inmates must rely on the Eighth Amendment's Cruel and Unusual Punishment Clause.  See Brogsdale v. Barry, 926 F.2d 1184, 1187 (D.C. Cir. 1991); see also Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979).  That is so because a pretrial detainee like

---

[3] Due process violations by the District of Columbia are properly challenged under the Fifth Amendment, while those by states are properly challenged under the Fourteenth Amendment.  See Atherton v. D.C. Off. of Mayor, 567 F.3d 672, 689 (D.C. Cir. 2009).

Bah may not be "punished" at all prior to conviction, whereas a convicted individual may be punished so long as that punishment is not "cruel and unusual." Bell, 441 U.S. at 535 n.16.  Pretrial detainees' Fifth Amendment rights are thus "at least as great as the analogous Eighth Amendment right[s]."  Hardy v. District of Columbia, 601 F. Supp. 2d 182, 188 (D.D.C. 2009) (cleaned up) (collecting cases).

The general framework for failure-to-protect claims is as follows: an inmate must show (1) "that he is incarcerated under conditions posing a substantial risk of serious harm" and (2) that a prison official acted with "deliberate indifference" with respect to that risk.  Farmer, 511 U.S. at 834.[4]  The District assumes that Bah has sufficiently alleged the first prong; its sole challenge as to the second prong is that Bah's complaint fails to allege that correctional officers acted with subjective deliberate indifference.  See Mot. at 12.  In other words, the District argues that Bah must allege that correctional officers knew that Bah faced a risk of serious harm, not merely that they should have known as much.  See id. ("[Bah] does not allege that anyone at the D.C. Jail did have knowledge of the argument or the other inmate's alleged prior acts.  'Should have' and 'would have' is not the same as 'did.'").  This limited challenge is unavailing under Kingsley v. Hendrickson, 576 U.S. 389 (2015), which is best read to require application of an objective rather than subjective standard to pretrial detainees' Fifth Amendment deliberate indifference claims.

In Farmer v. Brennan, the Supreme Court held that, for purposes of Eighth Amendment failure-to-protect claims, a convicted-inmate plaintiff must show that a prison official was subjectively deliberately indifferent to the risk of harm to the plaintiff.  See 511 U.S. at 828–29,

---

[4] This framework originated in the Eighth Amendment context.  See Farmer, 511 U.S. at 834.  Bah suggests— with little explanation—that under Kingsley v. Hendrickson, 576 U.S. 389 (2015), this entire framework is gone and the only question for a Fifth Amendment failure-to-protect claim is whether the assault was "objectively unreasonable."  Opp'n at 4 (internal quotation marks omitted); see id. at 3.  But while Kingsley has some bearing on failure-to-protect claims, it does not wholly displace the Farmer framework.  See Westmoreland v. Butler County, 29 F.4th 721, 729 (6th Cir. 2022) (incorporating Kingsley's objective analysis into Farmer framework); Castro v. County of Los Angeles, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc) (same).

837.  That is, "a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.  The Court's conclusion was grounded in "the text of the [Eighth] Amendment," which "outlaws cruel and unusual 'punishments'" but not "cruel and unusual 'conditions.'" Id.  Absent actual knowledge of a risk, an official's failure to alleviate that risk could not be fairly "condemned as the infliction of punishment." Id. at 838.

Twenty-some years later, in Kingsley v. Hendrickson, the Supreme Court held that a pretrial detainee need only show that correctional officers' use of force was objectively unreasonable for purposes of an excessive force claim under the Fourteenth Amendment's Due Process Clause.  See 576 U.S. at 391–92.  Put differently, the inquiry turns on the "perspective of a reasonable officer," not the subjective state of mind of individual correctional-officer defendants accused of using excessive force.  Id. at 397; see id. at 396.  In adopting this objective standard, the Kingsley Court reasoned that "proof of intent (or motive) to punish is [not] required for a pretrial detainee to prevail on a claim that his due process rights were violated"—rather, "a pretrial detainee can prevail by providing only objective evidence" as to the impermissibility of "the challenged governmental action."  Id. at 398 (citing Bell, 441 U.S. at 538, 541–43, 561).  And in rejecting the defendants' reliance on Eighth Amendment jurisprudence, the Court drew an explicit contrast between Due Process Clause claims and claims brought under the Eighth Amendment's Cruel and Unusual Punishment Clause: "The language of the two Clauses differs, and the nature of the claims often differs.  And, most importantly, pretrial detainees (unlike convicted prisoners) cannot be punished at all . . . ."  Id. at 400.

Kingsley involved an excessive force claim, not a deliberate indifference claim.  But a majority of the circuits to consider the question have read Kingsley to modify the subjective component of pretrial detainees' deliberate indifference claims, including failure-to-protect claims.  See Westmoreland v. Butler County, 29 F.4th 721, 726–29 (6th Cir. 2022) (failure-to-protect claim); Kemp v. Fulton County, 27 F.4th 491, 495–97 (7th Cir. 2022) (same); Castro v. County of Los Angeles, 833 F.3d 1060, 1068–71 (9th Cir. 2016) (en banc) (same); see also Short v. Hartman, 87 F.4th 593 (4th Cir. 2023) (medical deliberate indifference claim); Darnell v. Pineiro, 849 F.3d 17, 23, 26, 32–36 (2d Cir. 2017) (conditions-of-confinement deliberate indifference claim, including failure-to-protect allegations).  These cases generally reason that a subjective rather than objective requirement as to correctional officers' knowledge of a substantial risk to a pretrial detainee "cannot be reconciled with Kingsley's language, reasoning, and [emphasis on] the different status of pretrial detainees."  Westmoreland, 29 F.4th at 729 (quoting Kemp, 27 F.4th at 497).

The D.C. Circuit has yet to weigh in.  However, every judge in this District to consider the matter has agreed with the majority view and extended Kingsley's objective standard to other claims by pretrial detainees.  See United States v. Worrell, Crim. A. No. 21-292 (RCL), 2021 WL 2366934, at *10, *14 (D.D.C. June 9, 2021); O.M.G. v. Wolf, 474 F. Supp. 3d 274, 286–87 (D.D.C. 2020) (JEB); Banks v. Booth, 468 F. Supp. 3d 101, 110–11 (D.D.C. 2020) (CKK); C.G.B. v. Wolf, 464 F. Supp. 3d 174, 211 & n.31 (D.D.C. 2020) (CRC); United States v. Otunyo, Crim. A. No. 18-251 (BAH), 2020 WL 2065041, at *12–13 (D.D.C. Apr. 28, 2020).[5]  The District attempts to distinguish these cases as involving conditions-of-confinement claims generally, not failure-to-

---

[5] The District repeatedly cites Hardy, 601 F. Supp. 2d 182.  See Mot. at 11–12; Reply at 6.  That reliance is misplaced.  For one thing, Hardy predated Kingsley by six years.  For another, Hardy did not need to explore any potential delta between Eighth and Fifth Amendment rights because the plaintiffs in that case prevailed even under the more demanding Eighth Amendment standard.  See 601 F. Supp. 2d at 188–89, 191.

protect claims specifically.  See Reply at 7.  Yet the District offers no reason why the same reasoning does not apply to failure-to-protect claims, and various of these cases favorably cited failure-to-protect precedents in support of their reasoning.  See Banks, 468 F. Supp. 3d at 110–11; C.G.B., 464 F. Supp. 3d at 211 n.31.

The District also cites Fifth Circuit cases that declined to extend Kingsley's objective standard.  Reply at 7 (first citing Crandel v. Hall, 75 F.4th 537, 544 (5th Cir. 2023), cert. denied, No. 23-317, 2024 WL 674720 (U.S. Feb. 20, 2024); and then citing Cope v. Cogdill, 3 F.4th 198, 207 n.7 (5th Cir. 2021)).  Importantly, however, these cases relied on preexisting Fifth Circuit precedent specifically addressing deliberate-indifference claims brought by pretrial detainees.  See Cope, 3 F.4th at 207 n.7 (citing Hare v. City of Corinth, 74 F.3d 633, 643 (5th Cir. 1996)); Crandel, 75 F.4th at 544.  The District has not cited, and this Court is not aware of, comparable precedent in this circuit.  To the contrary, the D.C. Circuit has, albeit in a slightly different context, recognized important distinctions between pretrial detainees' Fifth Amendment rights and convicted prisoners' Eighth Amendment rights.  See Brogsdale, 926 F.2d at 1189–91.[6]

The Court joins the majority view of the circuits and the judges in this District that, post-Kingsley, pretrial detainees' deliberate indifference claims should be analyzed under an objective rather than subjective standard.  And the parties' sparring is limited to this purely legal question; the District assumes that Bah has otherwise plausibly alleged a predicate Fifth Amendment

---

[6] The Eighth, Tenth, and Eleventh Circuits have also declined to extend Kingsley.  The Eleventh Circuit did so based solely on existing circuit precedent, see Nam Dang ex rel. Vina Dang v. Sheriff, Seminole Cnty. Fla., 871 F.3d 1272, 1279 n.2 (11th Cir. 2017), while the Tenth Circuit did so in part based on existing precedent, see Strain v. Regalado, 977 F.3d 984, 989–93 (10th Cir. 2020).  The Eighth Circuit's analysis consisted of a single sentence in a footnote.  See Whitney v. City of St. Louis, 887 F.3d 857, 860 n.4 (8th Cir. 2018) ("Kingsley does not control because it was an excessive force case, not a deliberate indifference case.").

violation.  See Mot. at 11–12.[7]  Hence, the District's sole contention as to why Bah has failed to plausibly allege a predicate constitutional violation is unavailing.

### B.  <u>Monell</u> Liability

The question thus becomes whether Bah has plausibly alleged that a custom or policy of the District caused this violation.  There are various ways of establishing such a custom or policy: (1) "the explicit setting of a policy by the government that violates the Constitution," (2) "the action of a policy maker within the government," (3) "the adoption through a knowing failure to act by a policy maker of actions by his subordinates that are so consistent that they have become 'custom,'" or (4) "the failure of the government to respond to a need . . . in such a manner as to show 'deliberate indifference' to the risk that not addressing the need will result in constitutional violations."  <u>Baker</u>, 326 F.3d at 1306; <u>see also</u> <u>Hurd v. District of Columbia</u>, 997 F.3d 332, 337 (D.C. Cir. 2021).[8]  The parties focus on the third and fourth methods of establishing liability.  <u>See</u> Mot. at 4–10; Opp'n at 4–9.

To establish liability under the third method, "a plaintiff must show that the municipality 'knowingly ignore[d] a practice that was consistent enough to constitute custom,'" <u>Hurd</u>, 997 F.3d at 338 (alteration in original) (quoting <u>Warren v. District of Columbia</u>, 353 F.3d 36, 39 (D.C. Cir. 2004))—i.e., a practice that was "persistent and widespread," <u>id.</u> (quoting <u>Connick v. Thompson</u>, 563 U.S. 51, 61 (2011)).  Under the fourth method, when "faced with actual or constructive knowledge that its agents will probably violate constitutional rights, [a] city may not adopt a policy

---

[7] The Court observes, however, that allegations bearing on this Fifth Amendment failure-to-protect claim include a general risk of inmate-on-inmate violence at the jail, <u>see</u> Am. Compl. ¶¶ 17–49, the fact that the inmate who stabbed Bah had previously stabbed at least two other inmates, <u>id.</u> ¶ 9, and the fact that Bah had gotten into an argument with that inmate earlier in the day in an area that should have been supervised, <u>id.</u> ¶ 8.

[8] This "deliberate indifference" inquiry should not be confused with the "deliberate indifference" required to find an officer liable on a Fifth Amendment failure-to-protect claim.  While the terminology is the same, the inquiries serve different purposes.  <u>See</u> <u>Baker</u>, 326 F.3d at 1305–07.

of inaction." Id. at 339 (quoting Warren, 353 F.3d at 39).  This actual or constructive notice "may be shown by demonstrating '[a] pattern of similar constitutional violations.'"  Id. (alteration in original) (quoting Connick, 563 U.S. at 62).  For present purposes, there is substantial overlap between the two inquiries: "Where a plaintiff is alleging deliberate indifference based on a city's failure to respond to a pattern of misconduct . . . that analysis overlaps with the consideration of whether policymakers knowingly ignored a custom . . . ." Tyson v. District of Columbia, Civ. A No. 20-1450 (RC), 2021 WL 4860685, at *13 (D.D.C. Oct. 19, 2021); see also Alexander v. Gov't of District of Columbia, Civ. A. No. 17-1885 (ABJ), 2020 WL 3573462, at *8 (D.D.C. July 1, 2020).

Here, Bah alleges that his Fifth Amendment rights were violated and that this violation was caused by a custom or policy of the District because the District "failed to train its correctional officers concerning contraband control; and failed to supervise them adequately; and failed to staff housing units with an adequate level of staffing so as to ensure a reasonable level of inmate supervision."  Am. Compl. ¶ 53.  He further alleges that the District had knowledge that, absent such training, supervision, and staffing, its employees would likely violate individuals' constitutional rights.  Id. ¶¶ 23–49.  He relies heavily on a history of past inmate stabbings—with contraband weapons, in unsupervised situations, and due to correctional officer mistakes—which he characterizes as "unheeded warnings" of threats to inmate safety.  Id. ¶¶ 39–49; see Opp'n at 4–7.  He also relies on information including the November 2021 Marshals' memorandum and the July 2021 OIG report as evidence that the District had notice of "lack of staffing," "severe security lapses," the presence of contraband, and other issues at the D.C. jail.  Am. Compl. ¶¶ 23, 26–27, 33; see Opp'n at 6–8.  Bah argues that "there is no leap of logic required to understand that if there were no contraband, and the Jail had a properly supervised fully-staffed cohort of correctional

officers, a man who had previously stabbed other Jail residents would not have been able to obtain a weapon, follow a man he had argued with that day into the bathroom, and stab him in the eyeball." Opp'n at 8.

The question is thus not whether Bah has even attempted to establish <u>Monell</u> liability, but rather whether his allegations have sufficient "factual heft" to do so. <u>Tyson</u>, 2021 WL 4860685, at *10.[9]  Viewing Bah's allegations as a whole and drawing reasonable inferences in his favor—as the Court must at this early stage—the Court concludes that Bah has plausibly alleged municipal liability.  He has alleged serious issues with respect to contraband weapons, inadequate staffing, and inadequate supervision at the D.C. jail, that the District was aware of these issues, and that these issues caused the alleged violation of his Fifth Amendment rights.

Contrary to the District's contention, Bah's allegations of past stabbings in unsupervised situations at the D.C. jail are entitled to some weight here.  The District maintains that only two of these prior stabbings—the ones that occurred in a bathroom or shower—are relevant.  <u>See</u> Mot. at 5–6, 9–10; Reply at 4.  But while the probative value of those two incidents may be heightened given that Bah was also stabbed in a bathroom, it does not follow that stabbings that did <u>not</u> occur in a bathroom are irrelevant.  Bah alleges failures with respect to controlling contraband weapons and supervising prisoners in the jail.  Prior stabbings—wherever they occurred in the jail—bear on this inquiry.  After all, "[t]he standard for deliberate indifference requires only a 'pattern of <u>similar</u> constitutional violations by untrained employees,' rather than an exact duplication."  <u>Parker</u>

---

[9] <u>Cf.</u> <u>Irving v. District of Columbia</u>, Civ. A. No. 19-3818 (RDM), 2021 WL 495041, at *1, *5–6 (D.D.C. Feb. 9, 2021) (granting motion to dismiss because pro se plaintiff—the victim of March 2019 stabbing at the D.C. jail—"fail[ed] to articulate any connection" to a municipal policy and failed to respond to the District's <u>Monell</u> arguments); <u>Webster v. District of Columbia</u>, Civ. A. No. 20-300 (JDB), 2020 WL 4698436, at *1, *3 (D.D.C. Aug. 13, 2020) (granting partial motion to dismiss because plaintiff—who was stabbed at the D.C. jail in November 2018, then stabbed again by the same inmate less than a month later—provided "no factual allegations to contextualize what policy, custom, or long-term procedural oversights" gave rise to any constitutional violation).  The Court observes that these stabbings allegedly occurred after the stabbing incidents cited in Bah's complaint.

v. LeBlanc, 73 F.4th 400, 406 (5th Cir. 2023) (quoting Connick, 563 U.S. at 62); see also Hurd, 997 F.3d at 340.

The District also argues that these eight prior stabbings cannot support a plausible allegation of a persistent custom or a pattern of similar constitutional violations because these eight incidents occurred over a ten-year period, with the most recent incident occurring four-and-a-half years before the attack on Bah.  See Mot. at 6; Reply at 4.  This is a close question.  Two considerations ultimately lead the Court to reject the District's categorical position.

First, this "numerosity" argument is before the Court on a motion to dismiss, not at summary judgment.  This distinction matters.  There is never any "strict numerical requirement on the number of other examples that must be alleged, rather, the level of corroboration needed depends on the context and similarity."  Tyson, 2021 WL 4860685, at *10 (citing Carter v. District of Columbia, 795 F.2d 116, 124 (D.C. Cir. 1986)).  And courts unsurprisingly hold plaintiffs to a less demanding standard in terms of the number of prior comparators at the motion-to-dismiss stage than at summary judgment.  See Lipman v. Budish, 974 F.3d 726, 748 n.11 (6th Cir. 2020) (concluding that "[t]his differing procedural posture makes all the difference" because it may be very difficult for plaintiffs "to have secured evidence of misconduct with respect to other individuals" at the motion-to-dismiss stage); see also Hildreth v. Butler, 960 F.3d 420, 428 & n.6 (7th Cir. 2020) (collecting ten circuit cases "that have considered the frequency of instances to establish a widespread practice"—all of which were decided at summary judgment or later). Tellingly, neither of the cases the District cites for the proposition that Bah's numerical allegations are insufficient was decided on a motion to dismiss.  See Carter, 795 F.2d at 123 (judgment as a matter of law); Buie v. District of Columbia, Civ. A. No. 16-1920 (CKK), 2021 WL 4061142, at *18 (D.D.C. Sept. 7, 2021) (summary judgment); see also Mot. at 6.  And while the Court does

not place significant weight on Bah's allegation that these eight incidents make up only "a fraction" of the actual number of stabbings at the jail, Am. Compl. ¶ 49, it bears noting that these incidents are presented as only those personally known to counsel rather than as a comprehensive accounting of such attacks.

Second, the question is not whether these prior stabbings alone are sufficient to plausibly allege municipal liability, but whether they do so in conjunction with Bah's other allegations. While the District takes a "slice-and-dice" approach to Bah's complaint, see, e.g., Reply at 4, the Court is compelled to "consider the allegations in their totality," Vila v. Inter-Am. Inv. Corp., 570 F.3d 274, 285 (D.C. Cir. 2009); see also GOLO, LLC v. Goli Nutrition, Inc., Civ. A. No. 20-667 (RGA), 2023 WL 2456067, at *1 (D. Del. Mar. 10, 2023) ("[The Court's] obligation is not to read each allegation in isolation nor to nitpick a complaint line by line, paragraph by paragraph." (internal quotation marks omitted)).

Here, Bah also points to various other information, including the November 2021 Marshals' memorandum and July 2021 OIG report. The Marshals' memorandum concluded that entrance screening procedures at the jail were "inconsistent and sloppy" and that the jail was full of marijuana smoke. Am. Compl. ¶¶ 26–27. Contrary to the District's view, see Mot. at 6, these observations support a reasonable inference that correctional officers were broadly deficient in controlling contraband, including contraband weapons. The Marshals' memorandum's conclusion that inmates had observable injuries with no corresponding reports supports the inference that correctional officers were "not properly observing, preventing, or addressing injuries." Am. Compl. ¶ 28. And the memorandum's other conclusions—and the Marshals' notable decision to remove individuals in their custody from the jail—bear on jail conditions and the District's alleged failure to properly supervise staff. See id. ¶¶ 23–32.

Bah further cites an independent report and prior case noting pervasive understaffing at the jail, id. ¶¶ 17–22, as well as the D.C. OIG report.  While the OIG report is perhaps not as probative, it supports the reasonable inference that non-functioning surveillance cameras in the jail heighten issues associated with staffing shortages.  See id. ¶¶ 37–38.

Any one of these reports might be insufficient when considered in isolation.  But taken as a whole, and in conjunction with Bah's allegations of a history of prior stabbings with contraband weapons, they are sufficient to plausibly allege a municipal policy or custom at this stage.

The District's remaining contentions lack merit and will be addressed only briefly: The District intimates that contraband control failures, inadequate supervision, and inadequate staffing are insufficiently "specific" issues to make out a custom or a form of misconduct of which the District should have been aware.  See Mot. at 5, 7, 9.  The District does not meaningfully develop this argument.  And the cases cited by the District stand only for the proposition that a specific custom or form of misconduct must be identified, not that it must be defined at an extremely granular level of detail.  See Young v. District of Columbia, 107 F. Supp. 3d 69, 81 (D.D.C. 2015); Bell v. District of Columbia, 82 F. Supp. 3d 151, 157–58 (D.D.C. 2015).  Further, D.C. Circuit case law cuts against any such requirement.  See Morgan v. District of Columbia, 824 F.2d 1049, 1060–61 (D.C. Cir. 1987) (basing deliberate indifference conclusion on jail "overcrowding").

The District's contention that Bah fails to allege "any connection" between the attack on him and a policy or custom, Mot. at 7; Reply at 5, is belied by the plain language of the complaint.  Bah's complaint alleges that "DOC policies, practices, and unheeded warnings led to the attack," Am. Compl. at 3, and the following allegations clearly relate to alleged deficiencies that bear on Bah's case, see id. ¶¶ 17–49.  The District's argument that Bah fails to allege that the District was

aware of a lapse in training with respect to contraband control, see Mot. at 9, is similarly contrary to the language of the complaint, see Am. Compl. ¶¶ 26–27, 39–49.

The District maintains that "the metal knife used by [Bah's] inmate-assailant . . . may very well have been fashioned by the inmate inside the jail" rather than being "smuggled in from outside," and this possibility defeats any causal link between a failure to train correctional officers on contraband control and the attack on Bah. Mot. at 10. This argument rests on a faulty premise. As Bah's complaint alleges and common sense affirms, "contraband control" includes both efforts to prevent the introduction of contraband to a facility and to control contraband inside. See Am. Compl. ¶¶ 12, 27, 39. That the knife used to stab Bah hypothetically may have been fashioned inside the jail does not mean that it is not "contraband."[10]

*      *      *

Hence, the Court concludes that Bah has plausibly alleged both a Fifth Amendment violation (at least insofar as the District's limited challenge goes) and Monell liability. Bah's Fifth Amendment claim thus survives the District's motion to dismiss.

## II.   Count Four—Negligent Supervision and Training Claim

The District also moves to dismiss Count Four, Bah's negligent supervision and training claim. Under D.C. law, "[t]o establish a cause of action for negligent supervision [and training], a plaintiff must show: that the employer knew or should have known its employee behaved in a

---

[10] Because the Court concludes that Bah has plausibly alleged Monell liability under the custom or deliberate indifference methods with respect to jail conditions generally, it need not reach Bah's argument as to the District's deliberate indifference to the threat posed to him specifically by the other inmate. See Opp'n at 8–9. While Bah's argument finds some support in the case law, it appears to blur the line between Fifth Amendment deliberate indifference (here, involving knowledge by correctional officers) and Monell deliberate indifference (here, involving knowledge by District policymakers).

The Court will construe Bah's arguments as to general jail conditions as bearing on both the custom and deliberate indifference methods of establishing Monell liability. See Opp'n at 4–8. Having contended that these analyses overlap, Mot. at 8 n.1, the District cannot now be heard to fault Bah for not specifically directing each of his arguments to each method, see Reply at 6.

dangerous or otherwise incompetent manner, and that the employer, armed with that actual or constructive knowledge failed to adequately supervise the employee." Blair v. District of Columbia, 190 A.3d 212, 229 (D.C. 2018) (quoting Phelan v. City of Mount Rainier, 805 A.2d 930, 937–38 (D.C. 2002)).  The District's sole contention as to this claim is that Bah does not allege that the District had actual or constructive "notice" of "dangerous or otherwise incompetent behavior" on the part of correctional officers. Mot. at 13; see Reply at 8–9.[11]  This argument fails for many of the reasons previously stated as to Monell liability.  Bah plausibly alleges that the District had actual or constructive knowledge that correctional officers at the D.C. jail were not competently discharging their responsibilities.  See, e.g., Am. Compl. ¶¶ 26–31 (Marshals' memorandum to DOC detailing deficient entrance screening procedures, presence of marijuana, inmates with "observable injuries" but no corresponding reports, and correctional officers antagonizing inmates and telling them not to cooperate with the Marshals); id. ¶¶ 39–48 (previous stabbing incidents, many involving mistakes by correctional officers and/or officers' failure to observe the attack).

## III.   Conclusion

For the foregoing reasons, the Court will deny the District's motion to dismiss Counts One and Four of Bah's amended complaint.  An accompanying Order will issue on this date.

/s/
_____
JOHN D. BATES
United States District Judge

Dated: March 7, 2024

---

[11] In its opening brief, the District also contended that Bah needed to "identify" a specific employee who behaved in a dangerous or incompetent manner for purposes of this claim. Mot. at 13.  But the case cited by the District does not support that proposition, see Blakeney v. O'Donnell, 117 F. Supp. 3d 6, 21 (D.D.C. 2015), and the District concedes as much in its reply brief, see Reply at 8.